Consolidation Coal Company et al. v. United States, 2009, 5083. Mr. Becker, you're going to tell us about fees on production of coal. Yes, Your Honor. If it pleases the court, my name is Stephen Becker. I'm counsel for plaintiffs Consolidation Coal et al. This court in Exxon Patent recognized the general rule that an appellate mandate governs only that which was actually decided. That the issue might have been decided is not relevant. But the court construed a statute. Doesn't it necessarily follow that the underlying regulation is to be construed similarly? I beg to differ, Your Honor. It does not follow by implication, certainly not by necessary implication, that the construction of the regulation or the meaning of the regulatory term weight and value at sale follows from the construction of the statutory term coal produced. And as this panel made clear in the 2008 appellate decision, the only question before this court, the panel wrote, is one of statutory interpretation. The panel focused entirely on the term coal produced and what it means in light of the government's argument that constitutional avoidance doctrine should save it from having construed it, and indeed the Drummond Coal case having found that OSM construed coal produced as coal sold. And indeed I would point out at this juncture that although the government makes much of the issue of the, makes constitutional avoidance doctrine and suggests that, argues straight out that Drummond Coal is of no further moment in this case, Drummond Coal survives as a relevant case authority in this litigation because Drummond Coal found that OSM chose one of two different interpretations of the statutory term coal produced when it wrote its regulations. It could have chosen to write the regulations assuming that the statutory term coal produced imposes the tax on extraction. Rather Drummond Coal isn't binding on this. I understand your honor. It is relevant for its persuasive value and it basically went on deference to the agency. That's right your honor, but that's deference to the construction of the statutory term. In Drummond the DC circuit never considered it all, nor was it argued to them the doctrine of constitutional avoidance in terms of the statutory interpretation. That's very true your honor, but we're not here arguing. We have a very different case. I'm sorry? We have a very different case here. Yes, and your honor we are not arguing the statutory construction of coal produced. We are focusing on that portion of the regulations that actually imposes the tax that gives life to the medium. Well you say the regulation imposes the tax. It's the statute that imposes the tax. The regulation describes how the tax is to be calculated. Your honor. Without the statute there would be no basis for the regulation. That's true your honor, but plaintiffs contend that despite the benign nature in light of the construction under the constitutional avoidance doctrine, despite the determination that the statutory term coal produced can be saved and in and of itself not violate the export clause, had the agency gone ahead and amended its regulations, indeed had it years ago, started out with regulations that imposed, calculated, and we believe imposed the tax other than with regard to the weight and value at sale, then there wouldn't be an issue and we wouldn't be here. However, let me ask you a question. Do you make any contention that in view of our holding that the statutory language, in fact, only applied to the imposition of this duty on the extraction of the coal, that to the extent the regulations may, I don't say it does, but may attach to what happened after the coal was extracted, that that regulation, to that extent, is itself invalid without regard to the export clause? Do you make that argument? To the extent that the panel two years ago determined that coal produced means coal extracted, it rendered the regulation ultra viris of that statutory term. But for 30 years during most of the period concerning which plaintiffs are seeking damages. Your answer doesn't clarify for me whether you're making that argument. In other words, do you claim that without regard to the export clause, without looking at the export clause, this regulation is invalid to the extent that it affects the coal after it has been extracted? Absolutely, Your Honor. That's the essence of our argument. But the essence of your argument is that despite what we held in the previous appeal, that in fact this is a tax on the export of coal. That's exactly right, Your Honor, insofar as the regulation imposes the tax based on the weight and value of the coal. I'm not referring now to the effect of the regulation. I'm relating to whether the agency has any authority to go beyond calculating the tax at the moment of extraction. In other words, coal is extracted, and at some later point, it's determined what its weight is for purposes of the charge. To date, Your Honor, before the panel's determination two years ago, and in the wake of Drummond, the agency had the authority to carry out the regulations in the way it has over the past 30 years. In other words, it was determined by Drummond that because the statutory term was ambiguous, it could be construed either as a tax on extraction or a tax on production. What the Drummond court determined was that, number one, the agency had the opportunity to make a reasonable interpretation, and it did make a reasonable interpretation by choosing to impose the tax through these regulations on the sale. As of two years ago, certainly one could look at the continued use of the same regulatory language, weight and value at the time of sale, and reason that that is now ultra viris of what the statute is. But we're not resting on the ultra viris nature as of two years ago. We're resting on the fact that all of the nexus between the tax and the sale, not between the tax and extraction. You have what comes out of the ground is raw coal. That's a different commercial product from the coal that goes through processing, half of which is rock and debris. The argument that you're making now has nothing to do with whether the regulation is now invalid in part because of our prior decision. It seems to me, as I gather what your argument is, that the court has held that the statute only applies to the extraction of coal. The point of which the tax is, the charge is assessed is that extraction and that In the light of that, because this regulation does certain things later on, necessarily it is a tax on the export of the coal rather than a tax on the extraction of the coal. That's exactly our argument, Your Honor. The argument I'm concerned about is a somewhat different argument. It's an argument that without even reaching that question, you say that the regulation is now invalid because it purports to tax something that took place after the extraction of coal. In other words, even without regard to the export clause, this regulation is beyond the authority because of the way we have interpreted the statute in the prior appeal. And I gather that you say that is your argument. Well, yes. I believe now, Your Honor, I understand what you're driving at. I think it's a different argument from the argument you've made in your brief, but I'm just trying to find out if you're also arguing that. Your Honor, in our brief, we made several arguments regarding the nexus between the tax and the sale. And one of them was indeed the fact that it's not the same product. Now, one's a raw product, one's a finished product, different commercial uses. In addition, we make the argument that the connection or nexus between the tax and the severance or the extraction is attenuated and the connection with the sale is strengthened by the fact that at the time of sale, what's being taxed includes materials that never even came out of the ground. So it would be hard to call that an extraction tax. By the same token, there are various materials that do come out of the ground that are not taxed. So that attenuates the connection with the severance, in fact, severs the connection with the severance. That and the fact that they are two different products. In addition, the fact is that this is a tax on the weight and the value of the coal. The government has relied heavily on the Liggett case where the court, in the context of a different constitutional, less demanding constitutional prohibition, governmental immunity provision, observed that the tax doesn't rise or fall as a function of the price. But indeed it does, it can, in this situation because this is a tax on the weight and the value. And it's notable that it says in sections 870.12 of the regulations that this should be a tax on the weight and value, not merely at the time of sale, but at the time of the initial bona fide sale. In other words, OSM was concerned about sham sales at a depressed price, which in turn would lower the value of the coal and hence lower the tax. Mr. Becker, you're well into your rebuttal time. Do you wish to save it? I'll save it, Your Honor. Thank you. Mr. Hughes. May it please the court. Last time, this court reversed the trial court's judgment that the method by which OSM collected this tax was unconstitutional. To the contrary, this court found that the statutory imposition of this tax was constitutional. Indeed, in this court's very opinion, in the background section right up front, they noted that the issue wasn't just the statute. That the issue that the lower court ruled upon last time was the method. And by the method, it must mean OSM's regulatory method for collecting the tax. When this court reversed the trial court's judgment that was based upon this ground, this court addressed the very issue that consolidation is re-arguing again before you today. Let me get a couple of minor points out of the way, if I may. My colleague has made a lot of mention of the fact that this is a tax on both tonnage and value. First of all, it's not clear, and they certainly never alleged, that the value tax ever applied to their coal. Their coal, as I understand it, was all based purely on tonnage. The value tax is a ceiling on, I believe, lignite coal, which is a very, very low value. So what it is, in essence, is for that kind of coal, which is a low value coal, it does a value thing rather than a tonnage thing so that it encourages the production or doesn't discourage the production because it taxes that. The amount of tonnage that is taxed at that value rate is less than 1% over the last five years and less than 3% going back to 1995, I'm told. I don't believe that's in the record, but those statistics are certainly available. The value tax, the fact that this is allegedly a partial value tax is really just a red herring. This is, by and large, a tonnage tax, which brings it back to lignite, which said that a production tax, a manufacturing tax that is assessed upon a product that may be later exported is still constitutional. Let me ask you something. The only question on this appeal, I take it, is whether a prior decision decided the question of the validity of the application of the regulation as distinguished from the statute. Is that correct? That's the issue. That's a fair way of. The lower court said that's been decided in the prior appeal. And my difficulty with it is that on two occasions in the opinion of this court, we said that the only question is one of statutory interpretation. And then when you look at the conclusion, there was talk about the mandate, but the mandate doesn't say anything. It just says it's vacated, reversed, and remanded for further proceedings consistent with this opinion. I was not on this panel, but reading it, what it seems to me the court was doing is what appellate courts do all the time. They look at a case. They say that the trial tribunal has misinterpreted the statute. They explain what the statute correctly interpreted means. And then they said to the court, OK, we're going to reverse what you did. We're sending it back for you now to act in accordance with our decision, i.e., to apply the statute as we have interpreted. And that seems to me to be what they have done. I take it your argument would be that it's the law of the case, really. It's not a question so much of the mandate. It's the law of the case that neither the statute nor the regulation violates the export clause. Well, yes, Your Honor, but I think we would make that argument because we think that this court, although perhaps not explicitly addressing it, although, again, I think that by noting that the court's ruling upon the lower court's judgment, which ruled upon the method, you did explicitly address it. But even if not, if you look at this case in context, the first merits decision, finding this tax unconstitutional, wasn't based on a narrow statutory interpretation. It was based upon the court's interpretation of OSM's regulations and the Drummond decision. And so what this court was reviewing last time was not a narrow question of statutory interpretation. It was reviewing, as it says, OSM's method of collecting this tax. And the lower court had found that unconstitutional. This court reversed. So we take that to mean this court reversed the judgment that OSM's method was unconstitutional and remanded it for further proceedings. The further proceedings, of course, would have been to vacate the several million dollar judgment that was against the United States. What other issues were there in the case at the time of our previous decision besides the validity of the regulation and the validity of the statute under the export clause? Were there any other issues in the case at that point? Not that I recall, Your Honor. In fact, the thrust of most of the briefing. Again, I put the question to you. If you're right that we decided this case in the prior opinion, why, instead of remanding it for further proceedings consistent with this opinion, didn't we say the case is remanded with instructions to dismiss the complaint? If we had disposed of all the issues in the case in the prior proceeding, it seems to me there was no need for a remand for further proceedings. The case would go back and they would be told, dismiss the complaint. There's nothing to it. Well, I'm not in a position to speculate about what the court intended by the reverse remand. The best answer I can give you is the one I just gave, which is that the court intended to reverse and remand so that the lower court could vacate the judgment against the United States. It couldn't just dismiss the complaint. It needed to vacate the judgment. But I would add that often, and again, we're getting into kind of an ethereal world trying to divine things outside of actually knowing what they intended, but often when this court remands for further proceedings and wants a question answered, this court provides specific instructions. And I might have, if the court thought it had been leaving open the issue of whether the regulatory interpretation made this an unconstitutional tax or not, I might have expected to see that question directed to the lower court. Again, that's all speculation. I don't think that that's really appropriate for me to be doing per se, and the court can read its opinion. I'm reading the opinion and knowing the context of this litigation. The central issue last time, and indeed the major focus of consolidation's arguments, have always been that it was the regulatory interpretation of the tax that made this unconstitutional. This hasn't been a case simply about whether coal produced in the statute is constitutional or not. It's always been an argument that the later imposition, the later, sorry, and that's important, the later collection of the tax is what rendered it unconstitutional under the Export Clause. We know now that the statute is clearly constitutional. We also know that because it's a constitutional statute, consolidation has to pay the tax. They're liable for the tax. If what they're complaining about is that the time and the weight of the coal that they pay it on is unconstitutional, then they still need to pay it on what would be a constitutional assessment, which would be at extraction. Likely, they would probably pay more. Again, a lot of this isn't in the records, but the reason OSM has promulgated this regulation this way is coal is often first weighed at the first sale, transfer, or use. It was an accommodation to the industry. It was in a convenience. It was so that people didn't have to invest in a lot of new equipment to measure the coal straight out of the ground. It is also so that they can clean the coal and the weight of the coal is likely far less by the time it's clean coal. It's removed all the extraneous material. But if they want to pay it on coal extracted out of the ground, they certainly can't. They're probably going to owe us money. I don't know whether there's methods for collecting that or not, but coal extracted is a constitutional tax. They owe it. So suppose we didn't decide whether or not the regulation was perfect as written. Part B certainly says determine by weight at the time of the initial bona fide sale. And if the coal has to be taxed at the time of extraction, but you're determining the amount of the tax, not at the time of extraction, but rather sale, and everyone seems to agree that the weight most likely changes significantly from when it's extracted to when it's weighed, probably not in their favor. I agree with you, although if it sat out in the rain and you measured it on a wet day afterwards, maybe it would weigh more. I don't mean to interrupt you, but just on that point, because that was kind of critical in Drummond. After Drummond, OSM changed its regulations and you now can take an excess moisture deduction. So that issue is outside too. Now, if it does set outside in the rain, you get to deduct that. There are various formulas for calculating that. I got it. That was sort of an ancillary point anyway. So let's go back. So the fee is being determined by the weight at the time of sale. That doesn't seem very strongly linked to the weight at the time of extraction. And since you don't want this to be considered a tax on sale because that would be unconstitutional, you want it to be a tax on extraction, what do we do? How do we interpret Part B? Is it invalid in light of our interpretation of the statute? Does it exceed the authority vested by Congress and the agency for implementing the statute if the statute itself is limited to coal extracted? Well, two answers. First, Part B is the method. It's not the imposition. I mean, the imposition is in the statute, and again in Part A. You say that, and I understand your argument completely, but the problem is you're imposing based upon a weight that exists at the time of sale, which we all agree is not going to be the same weight that exists in the extraction. So the imposition is absolutely tied into the sale period time, time of sale. It's not tied to the extraction. Assuming that they sell clean coal and they keep the paperwork showing the amount of excess material taken off, yes. But this is, in a way, they've created kind of a technical legal argument out of a practical problem. Congress imposed a tax on production, which the court has construed as extraction. The coal production process, you can't bring coal out of the ground and kind of magically figure out what its weight. Sure you can. What do you mean you can't bring it out of the ground and figure out what it weighs? Sure you can. You go to a weighing station with your dump truck. Sure. Well, I misspoke a little bit. What I meant was they were faced with an industry that's practice was to do the first weighing of the coal at the time of the first sale transfer of value. And when they adopted this regulation, they did that for the convenience of the industry so that they didn't have to create scales at the coal mines. I understand you did something for the convenience of the industry, but if what you did exceeded the authority that statute permits you to do as an agency, then what do we do? Meaning you're saying, oh, well, we're doing it for your convenience, but you're still doing it wrong. So what happens? What do we do with the red? Excuse me, Your Honor. I think Liggett covers that answer. I think Liggett makes it clear that a tax is deferred. I don't disagree with you, and neither does he. A tax deferred is fine. He's saying this isn't a deferred tax because this is a tax based on the weight at the sale. It's not a tax based on the weight of the extraction. What if there is no sale, transfer, or use? Statute says coal produced. What if it's produced and not transferred, sold, or used? Is there a tax, or is your answer that's not our case? Well, I know better than to say that that's not our case because that's not a real answer to a hypothetical question. The answer is there's a tax owed. There's a collection problem. The thing here is OSM can't make a perfect regulation that taxes every single speck of coal that comes out of the ground and doesn't tax not coal that comes out of the ground. What they've done is tried to do their most reasonable interpretation of the statute to tax coal produced. It's certainly not perfect. If there's some coal producer out there that for the fun of it manufactures coal and never sells it, then yes, they'll never pay taxes. That's a very unlikely economic reality. More likely, they might just stockpile it for an extended period of time. They might, but ultimately they will sell it and they will pay a tax on it. Let me ask you this because this was a hypothetical. I'm assuming that you would agree with me that suppose the coal was extracted prior to the imposition of the statute, prior to Congress creating the statute, and it was stockpiled for a very long period of time, and then it was sold today. You wouldn't say that there is a tax owed, right? Because at the time it was taken out of the ground and extracted, there would have been no tax owed. So you couldn't, under the position you're arguing today, likewise argue that those people, by virtue of their sale, are now liable for a tax. I think to be consistent, that's correct, Your Honor, although I suspect that Mr. Becker will point you to some decisions from other courts where the department has taken a contrary position, but that's right. But under the position you're arguing today, you can't have it both ways. Right. Yeah, okay. So what if we just invalidated Part B, just that it's invalid as exceeding the statutory authority? We haven't messed with Part A, which seems perfectly reasonable to me and completely consistent with the statute. Well, again, I don't think you need to underlig it. First of all, I also don't think that the coal industry is going to want you to invalidate Part B because it's going to mean they're going to pay higher taxes. Oh, the coal industry is here arguing for something akin to that, so they're going to live and die by their own request, aren't they? I suspect that these companies don't represent the coal industry as a whole. I mean, we certainly don't have any amicus from the coal industry. But if the coal industry would like to pay the higher tax on the coal extracted, then I suspect that OSM would be happy to collect that and the paperwork's out there. I mean, in order to get the clean coal tax, they have to show what they took out of the coal so they easily could do the backtrack and add it all in. And if they want to give us more money, they can. But that's the gist of this. OSM has tried to promulgate a regulation based upon a reasonable interpretation of the statute that takes into account the facts on the ground of how coal is produced, manufactured, and sold. And the fact that they did this and allowed the weighing to take place at the first sale, transfer, use, the industry practice, can't convert a constitutional tax into an unconstitutional tax. And it doesn't make the method by which they collect it unconstitutional. And just on the ultra-virus point, and I almost fear wading into this, but it really is an ultra-virus attack, not a constitutional attack based upon the money mandating export clause. If it's an attack on the Secretary's promulgation of a regulation with national standards, the statute directed that attack to go to district court. And I understand that previously this court had held that jurisdiction was proper in the Court of Federal Claims. That decision was based upon Cypress-Amex, which has now been overruled by the Supreme Court and Clint Wood Elkhorn. So to the extent they're arguing a pure ultra-virus challenge, the jurisdiction should be in the district court. I don't understand them to be arguing that. I understand them to be arguing that the method by which OSM collects the tax through its regulations violates the export clause. To the extent that that's their argument, it's controlled by this court's prior decision. Thank you, Mr. Hughes. Your time is up. Mr. Becker has a little rebuttal time. The government makes a lot of the observation. It wasn't a decision by the panel two years ago. It was an observation that the Court of Federal Claims two years earlier in the opinion on summary judgment observed that... because Congress only allowed for a tax on coal produced, i.e., coal extracted. And suppose Part B, which ties it to wait at the time of sale, is an invalid attempt by the agency to expand beyond the scope of congressional authority delegated to them. So why don't I just invalidate Part B? And then your companies and all the other coal industry companies can pay the tax based on the amount they take out of the ground. Your Honor, the damage has already been done. It's only two years ago that the panel decided that coal produced means a tax on extraction. Before that, there was no ultraviolet... So it didn't decide anything about the tax. All it had decided was that coal produced means coal extracted. I stand corrected. I meant the term coal produced meant coal extracted. So that up until two years ago, whatever was collected by imposition of the tax and the use of calculating based on weight and value at the time of sale meant that OSM was taxing the coal in the export stream, hence violating the export clause and entitling the plaintiffs to damages. Why is B even really violating the export clause? Because why isn't determination of weight at time of sale a more accurate reflection of how much coal you really extracted? Because it is, in fact, the determination of the amount of purer coal. It's never the case that you add impurities in the process after extracting from the ground. It's the case that you remove the rock and debris that isn't pure coal. So why isn't Part B simply the weight of the actual coal extracted as opposed to the weight of the giant lump of stuff you take out of the ground, much of which, or some of which at least, isn't coal? Your Honor, respectfully, I believe that you're referring to what is best described as an ultra-virous argument. We're saying that regardless of to whose benefit the government claims that it's to, the plaintiff's benefit, regardless of how you characterize the benefit, if any, the fact is that all the nexus is with sale. You can't defer a tax on product A, in this case the extracted product, and say that it's deferred to a different product B. It's a different commercial product. These companies, and indeed, contrary to the government's suggestion, we now are representing the majority of the national coal companies, and they are united on this issue. The majority of the companies or the majority of the production? Well, the same. I don't want to say they're equal, but they operate somewhat in proportion. The point is, Your Honor, that this is a tax on coal in the export stream. Whether it's a greater amount or a lesser amount, how much tax we pay is really not the issue before the court in this litigation. The issue is, is this a tax on our product in the export stream? I should point out, with regard to the mandate issue, that there was no decision by the Court of Federal Claims on summary judgment with regard to weight and value at sale. Only the term coal produced was construed by the Court of Federal Claims. Hence, it's not surprising that this panel regarded the only issue to be decided as the statutory term coal produced. And it's very clear from the Supreme Court's decision in Hartford Life that it matters not what was the contention of counsel. Certainly, we agree that we argued the issue before the Court of Federal Claims. But the Court of Federal Claims focused entirely on the meaning of coal produced and determined, based on Drummond, that it meant coal sold. It did not construe weight and value, the regulation Part B, as Your Honor refers to it. It did not construe that. It made no decision on it. And similarly, this panel made no decision on that issue as well. Thank you, Mr. Becker. I think the time has more than expired. Thank you. Take the case under advisement.